UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:08-CR-01 |
| | ) | (JORDAN/GUYTON) |
| REGINALD WIDENER, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the district court as may be appropriate. This matter came before the Court on June 18, 2008, for an evidentiary hearing on the defendant's Motion To Suppress Evidence [Doc. 15]. Defendant Reginald Widener ("Widener") was present with his attorneys, Paula Voss and Karmen Waters. Assistant United States Attorney David Lewen represented the government.

In the present case, the defendant is charged with four counts, including possession of crack and cocaine with the intent to distribute, and being a felon in possession of a firearm [Doc. 1]. The drugs and firearms were found during the search of the defendant's residence.[1]

The defendant's Motion [Doc. 15] asserts that the search of his residence, which occurred while he was on parole, was unreasonable. The government counters that the defendant had given

---

[1] At the hearing, the parties stipulated that the defendant's residence was searched on May 11, 2007, and that illegal drugs and a firearm were found during the search.

1

consent to search his residence at any time as a condition of parole. At the hearing, the government presented the testimony of Joe Kszos ("Kszos"), a probation and parole officer for the State of Tennessee. Two exhibits were introduced at the hearing, as described herein. The defendant presented no testimony. The Court heard oral argument, and then took the matter under advisement. See 18 U.S.C. § 3161(h)(1)(J).

## I: FACTS

### TESTIMONY OF JOE KSZOS

*Direct Examination*

Kszos, a twenty year employee of the Tennessee Board of Probation and Parole, began supervision of Widener, a parolee, in November, 2005. (Tr. 3).[2] At the outset of the parole, a parole officer is required to sit down with the parolee and together go through the rules listed on the parole certificate. Kszos believes this was done with Widener. (Tr. 4). The defendant's Parol Certificate, signed by Widener, and dated November 9, 2005, was marked and received as Exhibit 1. This document was not signed by Kszos, but by another parole officer.

Rule 8 of the Parole Certificate, Exhibit 1, states:

> I agree to a search, without a warrant of my person, vehicle, property, or place of residence by any Probation/Parole Officer or law enforcement officer, at any time.

When Widener first met with Kszos, Kszos and Widener together went through a document titled State of Tennessee - Parole Rules. Kszos went through the rules 'one by one very specifically"

---

[2] All page references are to the transcript of the hearing, which has been filed in the record. [Doc. 23].

2

with the defendant. (Tr. 8). The Parole Rules, signed by Widener and Kszos, and dated November 15, 2005, was marked and received as Exhibit 2. Rule 8 of the Parole Rules, Exhibit 2, states:

> I agree to a search, without a warrant, of my person, vehicle, property, or place of residence by any Probation/Parole Officer or law enforcement officer, at any time.

With regard to this Rule 8, Kszos told Widener that "he needed to be concerned about this rule because the police and us had the right to search him at any time." (Tr. 8). The defendant, according to Kszos, appeared to understand the rules, including Rule 8. (Tr. 9).

The state parole office has "periodic night crews" of officers who conduct searches and curfew checks on parolees. On May 11, 2007, Kszos gave the search team the name and address of several persons to search, one of whom was Widener. Kszos was concerned about Widener due to Widener's arrest in February, 2007 for possession of narcotics, and other charges. (Tr. 10-11). Kszos did not give Widener's name to the search team to "harass" the defendant. (Tr. 12).

### Cross-Examination

Kszos testified that he was not present when Widener signed the Parole Certificate, Exhibit 1, and therefore, he does not know whether the officer went through all of the document with the defendant. (Tr. 13). As for Kszos reviewing the Parole Rules, Exhibit 2, with Widener, Kszos recalls no questions asked by the defendant, and particularly, Widener did not "ask about the search." (Tr. 16).

On the occasion of the search of the defendant's residence in May 2007, Kszos had no particular suspicion that Widener was doing anything illegal at that time. Kszos, however, did have a general concern about Widener because of the defendant's arrest in February 2007 for possession

3

of marijuana. (Tr. 20-21). The search, according to Kszos, was based on the defendant's written agreement to a warrantless search at any time. (Tr. 22).

## II. ANALYSIS

Widener contends that the firearm and drugs, which law enforcement seized in his residence on May 11, 2007, must be suppressed, because they are the fruits of the officers' illegal entry into, and search of, his home. He argues that the terms and conditions of his parole, (Exhibit 1, 2), did not give his consent to the search.

The government contends that the evidence was recovered during a lawful search which was conducted pursuant to valid Parole Certificate and Parole Rules agreements, signed by the defendant. The government argues that the parole agreement allows for a warrantless search of the defendant and his residence at any time.

The Fourth Amendment protects citizens against unreasonable searches and seizures. U.S. Const. amend IV. Generally speaking, a search conducted pursuant to valid consent is an exception to the Fourth Amendment warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218 (1973). In the present case, of course, the signed consent to search is contained within the terms of the defendant's parole agreement.

The United States Supreme court has addressed the constitutionality of suspicionless searches of parolees. Samson v. California, 547 U.S. 843 (2006). The Samson Court discussed the balancing inquiry in determining one's status on the "privacy continuum." Id. at 850. The Court stated that at one end of the continuum are free citizens, who enjoy absolute liberty. Probationers have fewer expectations of privacy than free citizens, and parolees have still fewer expectations of

privacy than probationers. Id. At the other end of the spectrum are inmates, who have no legitimate expectation of privacy from searches of their prison cells. The Samson Court held that suspicionless searches of parolees are reasonable under the Fourth Amendment, because "parolees have fewer expectations of privacy than probationers." Id. at 850, 857.

In the present case, at the time of the search, Widener was a state parolee who had a consent to search condition, paragraph 8, included in his Parole Certificate, and the same provision included as Rule 8 in his Parole Rules, both of which defendant signed. Therefore, consistent with the Samson decision, the police did not need to suspect defendant of any wrongdoing prior to searching him or his residence.

During oral argument, the defendant asked the Court to be guided by the dissenting opinion in Samson. The dissent sought to limit the ruling to parolees covered under California's unique parole statute, which contained safeguards to prevent searches conducted solely for the purpose of harassment. From this, the defendant argues that the consent of the parolee is not enough basis for a warrantless search. This Court, however, must conclude that the law established by Samson is not so limited. The defendant's argument that reasonable suspicion, or probable cause, were needed to justify the search is without merit.

The Court finds that Widener voluntarily signed a written consent to a warrantless search presented to him as part of his parole agreement with the State of Tennessee. The Court finds that this constitutes fully informed consent. The search could occur at any time. Kszos credibly testified that he was in no way harassing the defendant by this search. In fact, the testimony regarding the defendant's arrest, in February, 2007, shows that Kszos had reason to be concerned about whether Widener was adhering to the rules of his parole.

# III: CONCLUSION

The Court concludes that the defendant's Motion to Suppress Evidence [Doc. 15] is without merit, and the Court respectfully **RECOMMENDS** that the said motion **[Doc. 15]** be **DENIED**.[3]

                              Respectfully submitted,

                              s/ H. Bruce Guyton
                              United States Magistrate Judge

---

[3] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see also Thomas v. Arn, 474 U.S. 140 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).